BARABOO LAND, MINING & LEASING COMPANY, Respondent, vs. WINTER, imp., Appellant. ·

*December 6, 1906—January 29, 1907.*

*Vendor and purchaser: Construction of contracts: Purchase or option?*

1. A contract on which plaintiff founded its action provided that whereas plaintiff was the owner, as vendee, of certain leases and options on certain lands, describing them, it, for a valuable consideration, did thereby grant, bargain, and sell, assign, set over, and deliver to the defendant all its right, title, and interest in and to the options thereinbefore described, upon the following terms and conditions, to wit: "With the express understanding and agreement that this contract is to be in force for and during the period of nineteen months from the date hereof, and that on or before the expiration of said nineteen months the said [defendant] is to pay to the [plaintiff] for such options for all the lands described therein the sum of $300 for each and every acre thereof, . . . in other words, the whole 193¾ acres to be taken and paid for at the rate of $300 per acre. At which time and upon the payment of which said sum the [plaintiff] is to deliver to or cause to be delivered to the [defendant] a deed of the premises described in said options." The contract further provided that "all liabilities attendant as on the option herein described, which are therein imposed" upon the plaintiff, were assumed by the defendant. *Held:*

(1) The instrument was not an option to purchase, but an express sale and transfer of the plaintiff's right, title, and interest in the options to defendant, an assumption by defendant of liabilities thereunder, and an express promise by him to pay

the stipulated price per acre on or before nineteen months, with a promise on the part of plaintiff to deed the lands to defendant.

(2) The provision that the contract was to be in force for nineteen months was not repugnant to or inconsistent with the express agreement to pay.

(3) The covenants in the contract were mutual.

(4) It was immaterial whether the options transferred gave the right to possession or not, since the options secured to plaintiff the right to acquire the ownership of the lands thereby covered and transfer the title to the defendant.

2. In such case the recital of a "valuable consideration" did not necessarily mean that the parties stipulated for a consideration separate and outside of the alleged purchase price of the lands, since a nominal consideration would satisfy the formal recital of consideration usually inserted in contracts.

3. The fact that plaintiff would make a large profit was not significant, since it could not be inferred, for the purpose of construing a contract to purchase into an option, that the stipulated price was unreasonable.

APPEAL from an order of the circuit court for Sauk county: E. RAY STEVENS, Circuit Judge. *Affirmed.*

This is an appeal from an order of the circuit court for Sauk county overruling the demurrer of the defendant *Winter* to the complaint of the plaintiff.

The complaint is as follows:

"(Title of Case.)

"The above-named plaintiff, appearing herein by its attorneys, complains of the defendants, and for cause of action alleges: That the plaintiff herein is a corporation duly organized and existing under and by virtue of the laws of the state of Wisconsin, doing business therein, with its principal place of business at the city of Baraboo, Sauk county, Wisconsin. That the defendant, *Emil Winter,* is a capitalist, residing at Pittsburg, Pennsylvania, who at the times hereinafter stated was a capitalist engaged in mining operations and in the purchase of lands and options in Sauk county, Wisconsin, and other localities, for the purpose of obtaining and holding mines and mining lands. That said defendant William C. Rodgers was at the times hereinafter stated a duly authorized representative and agent of said defendant *Emil Winter,* del-

egated with the power and authority to act for said *Winter* in matters pertaining to the transaction of the business of said *Winter* in the county of Sauk, and authorized to transact the business hereinafter more fully set forth. That heretofore and, to wit, on or about the 18th day of February, A. D. 1903, the plaintiff herein purchased of and from one John Koenig and Anna Koenig a certain option upon certain lands situate in Sauk county, Wisconsin, which said option was recorded in volume A of Options, page 5, Sauk county records, under which said option the plaintiff was to have the right to purchase of and from said John Koenig and Anna Koenig, his wife, the lands described therein for and at the agreed price of twenty-five thousand dollars ($25,000). That on or about the 26th day of February, A. D. 1903, the said first party purchased of and from one Henry Oetzmann a certain option upon certain lands and premises situate in Sauk county, Wisconsin, which option was recorded in volume A of Options, at page 36, Sauk county records, under which said option the plaintiff was to have and did have the right of purchasing the lands therein described upon the payment to said Henry Oetzmann of the sum of eight hundred ($800) dollars, and that heretofore, on or about the 26th day of February, 1903, the plaintiff purchased of and from one Fred Oetzmann and Margaret Oetzmann, his wife, a certain option upon certain lands described therein and situate in Sauk county, Wisconsin, which said option was recorded in volume A of Options, at page 37, Sauk county records, and under the terms of which said option the plaintiff was to have and did have the right to purchase said property therein described of and from said Fred and Margaret Oetzmann for the sum of three thousand two hundred ($3,200) dollars. That heretofore and on or about the 2d day of June, 1903, the said defendant *Emil Winter,* by his said agent, William C. Rodgers, duly made, entered into and delivered an agreement which was in words and figures as follows:

" 'This agreement, made and entered into this the second day of June, A. D. 1903, by and between the *Baraboo Land, Mining & Leasing Company,* a corporation organized and existing under and by virtue of the laws of the state of Wisconsin, with its principal place of business in the city of Baraboo, Sauk county, Wisconsin, party of the first part, and *Emil*

*Winter,* of the city of Pittsburg, Pennsylvania, party of the second part, witnesseth: That whereas, the said first parties are now the owners of, as vendees of certain leases and options upon certain lands in the town of Freedom and Westfield, Sauk county, Wisconsin, which said options are herein referred to as follows: A certain option executed by John Koenig and Anna Koenig, his wife, to the said first parties, which is recorded in volume A of Options, page number 5, and a certain option executed by Henry Oetzmann, and which said option is recorded in volume A of Options, at page 36, and upon a certain option executed by Fred Oetzmann and Margaret Oetzmann, his wife, and which said option is recorded in volume A of Options, at page 37, and which are thus referred to for the purpose of identification, the same as if the premises therein described and the terms and conditions therein stated were fully set forth in this agreement:

" 'Now, therefore, for a valuable consideration the said first parties do hereby grant, bargain, and sell, assign, set over, and deliver unto the said second party all of their right, title, and interest in and to the said options hereinabove described, upon the following terms and conditions, to wit: With the express understanding and agreement that this contract is to be in force for and during the period of nineteen months from the date hereof, and that on or before the expiration of said nineteen months the said second party is to pay to the said first parties for such options for all the lands described therein the sum of three hundred dollars for each and every acre thereof, said options to be taken collectively and the amount to be paid being for the sum of one hundred and ninety-four and three-fourths acres (194¾) of land, more or less, according to survey thereof, and not to be delivered or turned over to the said second party separately or alone; in other words, the whole one hundred and ninety-four and three-fourths acres to be taken and paid for at the rate of three hundred dollars per acre. At which time and upon the payment of which said sum the said first parties are to deliver to or cause to be delivered to the said second party a deed of the premises described in said options. It is understood herein that all liabilities attendant as on the option herein described, which are herein imposed upon the said first parties, are to be and are hereby assumed by said second parties.

" 'In witness whereof the parties have hereunto set their hands and seals this the 2d day of June, A. D. 1903.

" 'BARABOO LAND, MINING & LEASING Co.
[Corporate Seal.]        " 'By J. T. Gibson, Pres.
" 'By S. A. Pelton, Sec.
•        " 'EMIL WINTER,
" 'Per William C. Rodgers.
" 'Signed, sealed, and delivered in presence of
" 'E. J. Battles,
" 'Nettie Malloy.'

"That the options herein mentioned were the options above described. That at the time of making said agreement the said plaintiff had obtained and was the owner of the options therein described, and has complied with all the conditions which enabled and authorized them to enter into said agreement with the said defendants. That on the second day of January, 1905, the expiration of said period of nineteen months, referred to in the said contract, neither the said *Winter* nor the said defendant Rodgers was to be found in the said county of Sauk. That the plaintiff, by its officers and agents, went to the office of said Rodgers at Baraboo, Sauk county, but they were informed that he was not within the state of Wisconsin. That they were ready, able, and willing in all respects to comply with the said agreement above set forth, and were ready, able, and willing to deliver to the said defendants a deed of said premises and to pay to the respective parties named in said option the full consideration called for in said options, provided the said defendants were willing to carry out their said agreement. That on said 2d day of January, 1905, when the plaintiff found that said defendants were without the state, they telegraphed the said defendant *Winter* that the plaintiff stood ready to fully carry out its part of the contract made on June 2, 1903, and that they demanded compliance on his part and called for a reply. That they received no reply to said telegram until about January 18, 1905, when the plaintiff received a letter from said defendant *Winter* in which he stated that he had no knowledge of a contract or agreement made with the plaintiff, except an option, which had lapsed according to its terms. That the plaintiff also duly notified said Rodgers of its readiness in all respects to comply with said agreement, and the plaintiff has

on its part duly performed and complied with all the require-
ments of the said agreement.

"The plaintiff further alleges that it has at all times been
ready, and now is ready and willing, to comply in all respects
with the terms of said agreement and to deliver or cause to
be delivered to them a deed of said lands, free from all in-
cumbrances, and to convey to the defendants good and perfect
title to all the premises described in said agreement, but that
the said defendants have refused to carry out said agreement
and have refused to pay the consideration therefor, and have
repudiated the same, and the claim is now made by the de-
fendants that the said defendant Rodgers was not in fact the
agent of said *Winter* and was not authorized to make said
agreement. The plaintiff further alleges, on information and
belief, that the said defendants, for the purpose of avoiding
and evading the terms of said agreement, sought to hinder
and prevent the plaintiff from acquiring and obtaining such
deeds as would enable the plaintiff to completely and fully
carry out said agreement, and they sought to induce the per-
sons who had given to the plaintiff the options named in the
agreement to withhold their deeds and thereby prevent plaint-
iff from carrying out its agreement, and the defendants now
pretend that the said options referred to in said agreement
were never binding and that the said agreement never had any
binding effect. That the plaintiff has been put to great ex-
pense and suffered great loss by reason of the failure of said
defendant to carry out said agreement. That although the
said defendants. allege and pretend that said Rodgers was
never authorized to make said agreement as agent for the de-
fendant *Winter,* the plaintiff alleges, on information and be-
lief, that he was so authorized, and that he represented him-
self as the agent of said defendant *Winter,* and both said de-
fendants so conducted the business of said defendant *Winter*
as to lead the plaintiff to suppose and believe that he was so
authorized to act as his agent, and the plaintiff acted and re-
lied on such conduct.

"Wherefore the plaintiff prays judgment for the sum of
fifty-eight thousand four hundred and twenty-five dollars
(58,425) against said defendants or either of them, or for
such other sum as may be just, with interest and costs of suit."

The defendant *Winter* demurred to the complaint for failure to state facts sufficient to constitute a cause of action, and on other grounds not necessary to specify. The demurrer was overruled.

For the appellant there was a brief by *G. Stevens,* attorney, and *Olin & Butler,* of counsel, and oral argument by *H. L. Butler.*

For the respondent there was a brief by *Bentley & Kelley,* attorneys, and *Burr W. Jones,* of counsel, and oral argument by *Mr. F. R. Bentley* and *Mr. Jones.*

KERWIN, J. Whether the complaint states a cause of action is the question for determination upon this appeal. The other grounds of demurrer appear to have been abandoned, since they have not been urged either in brief of appellant or upon oral argument. Upon demurrer the facts set up in the complaint must be regarded as admitted; and the question is, Do they constitute a cause of action upon contract? The question turns on whether, under the allegations of the complaint, the plaintiff sold the options to defendant *Winter* and agreed to deed the lands covered thereby, in consideration of which defendant agreed to assume the liabilities under the options and pay $300 per acre for the land within nineteen months, or whether the contract between plaintiff and defendant was a mere option by which defendant had the privilege of buying within nineteen months but was under no obligation to do so. It is strenuously insisted by counsel for appellant that the transaction amounted to a mere option and that the complaint fails to show the existence of any contract of purchase, but, on the contrary, shows that the contract between the parties was in effect merely an option contract which lapsed without acceptance, and hence no liability accrued thereunder. The defendant's liability upon the facts admitted by the demurrer turns mainly upon the construction of the

contract set up in the complaint. The options to the plaintiff upon the lands covered by them confessedly gave it a valuable right. It was entitled under them to a conveyance of the property covered by the options upon compliance with the conditions thereof. This was a property right which the plaintiff could convey for a valuable consideration. It could perfect its title through the options and thereby acquire and convey title to the property. The main question, therefore, is, Did it contract to do so, or did it give appellant *Winter* an option to purchase?

The complaint alleges the ownership of the options and the contract with appellant. The contract provides that, for a valuable consideration, the plaintiff

"does hereby grant, bargain, and sell, assign, set over, and deliver unto the said second party all of their right, title, and interest in and to the said options hereinabove described, upon the following terms and conditions, to wit: With the express understanding and agreement that this contract is to be in force for and during the period of nineteen months from the date hereof, and that on or before the expiration of said nineteen months the said second party is to pay to the said first parties for such options for all the lands described therein the sum of three hundred dollars for each and every acre thereof, . . . in other words, the whole one hundred and ninety-four and three-fourths acres to be taken and paid for at the rate of three hundred dollars per acre. At which time and upon the payment of which said sum the said first parties are to deliver to or cause to be delivered to the said second party a deed of the premises described in said options."

The contract further provides that all liabilities attendant as on the options imposed upon the first parties are assumed by the second party. It is difficult to see how this instrument can be held to be an option to purchase. There is an express sale and transfer of the plaintiff's right, title, and interest in the options to defendant, and an assumption of liabilities thereunder by him, and an express promise to pay $300 per acre for each and every acre covered by the options on or be-

fore nineteen months from date of contract of sale, and a promise on the part of plaintiff to deed the lands to defendant. The agreement by express terms to pay is not optional, but is "with the express understanding and agreement . . . that the whole one hundred and ninety-four and three-fourths acres to be taken and paid for at the rate of three hundred dollars per acre" on or before nineteen months from the date of the contract. Nor is the provision that the contract is to be in force for nineteen months repugnant to or inconsistent with the express agreement to pay. It may have been inserted to emphasize the fact that the transaction was to be carried out within the period of nineteen months, and was doubtless surplusage. But it can easily stand with the express provisions of the contract. The words in the contract to the effect that the sale and delivery of the options is "upon the following terms and conditions" have reference, obviously, to the time and manner of payment and the assumption of liability on the part of the second party under the options. If the purpose was to grant an option and not make a contract to sell the option and real estate covered thereby, it seems a different instrument would have been executed. The contract in question upon its face has virtually none of the elements of an option. It in effect sells and delivers all the right, title, and interest of the first parties in the options to the second party on the terms and conditions that the contract shall be in force nineteen months, during which time the second party is to pay the first party for all the lands described in the options, being 194¾ acres at $300 per acre, the first party to deed the premises to second party at the time of payment. The covenants in the contract are mutual—on the part of the second party to buy, and on the part of the first party to sell. So we fail to see how it can be construed an option to purchase.

But it is claimed that the construction contended for by plaintiff results in an unreasonable and improbable business transaction, inconsistent with the language of the contract,

and renders its most important provisions meaningless and ineffective. In this connection stress is placed upon the fact that plaintiff was not the owner of the land; that possession was not delivered; that the contract was made upon a valuable consideration aside from the purchase price of the land; and that an enormous price was stipulated in the contract. This contention goes to the question of construction, and we fail to discover the significance attributed to it by counsel for defendant. It is contended that the options give no right of possession. True, it does not appear from the complaint whether the options give the right of possession or not. But this seems wholly immaterial. The contract of sale and agreement to deed the property to defendant was as effectual and binding as if immediate possession was agreed to be given. Whatever rights plaintiff had under the options were transferred, and, although plaintiff was not the owner of the lands, the options secured to it the right to acquire such ownership and transfer the title to defendant, which it agreed to do. The recital of a "valuable consideration" in the contract does not necessarily mean that the parties stipulated for a consideration separate and outside of the alleged purchase price of the land. It may have been intended as the formal recital of consideration usually inserted in contracts. A nominal consideration would satisfy the call. However, it cannot be inferred for the purpose of giving a different construction to the contract than it otherwise would have that the mere recital that the contract was made upon a valuable consideration means that some substantial consideration moved the parties to contract, independent of the mutual covenants stipulated expressly on both sides to be performed. So we do not think that the mere recital of a "valuable consideration" raises any inference that any consideration in fact was paid or to be paid other than the purchase price of the land. But, even if there was some other or additional consideration, it would not, in our opinion, alter the situation so far as the construction

of the contract is concerned. The contract on its face is either an option or a contract of sale and cannot be changed by construction.

Nor do we think the fact that plaintiff would make a large profit significant. The defendant doubtless agreed to pay what he regarded the property worth. At least, it cannot be inferred, for the purpose of construing a contract to purchase into an option, that the stipulated price was unreasonable.

It is argued by counsel that the explicit promise to take and pay for the whole 194¾ acres at $300 per acre means "in the event of purchase" the land is to be taken and paid for. But this is importing by construction into the contract words not found there, and which change the express agreement to purchase into a mere option to purchase, which we think by no rule of construction can be done.

We are cited to *Nelson v. Stephens,* 107 Wis. 136, 93 N. W. 163, as authority for appellant's position. But the words relied upon there were used in an extension of an option. There was no question but that the original instrument was a mere option, and it was held that, while the agreement extending the option contained words amounting to a promise to pay the consideration, still the subsequent agreement did not change the character of the option agreement, construing the option and the extension of it together. True, as argued by counsel for appellant, the intention of the parties must govern. "Courts give effect to contracts according to the intention of the parties—do not make them." But an intention cannot be read out of a contract contrary to the plain and ordinary meaning of the words. Effect must be given to all the provisions of the contract if they can stand together. Courts "cannot substitute a new contract for the one the parties see fit to make because nonperformance on the part of one of the parties thereto becomes difficult or the question of such nonperformance onerous." We confess the contract referred to in the complaint is not as clear and explicit as it might be,

but we think a cause of action is stated in the complaint, and therefore the court below was right in overruling the demurrer.

*By the Court.*—The order appealed from is affirmed.

Timlin, J., took no part.